No. 3700

Second Circuit

———

ALEXANDER v. TEXAS & PAC. RY. CO.

———

(July 5, 1930. Opinion and Decree.)
(July 31, 1930. Rehearing Refused.)

———

Foster, Hall, Barret & Smith, of Shreveport, attorneys for plaintiff, appellee.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellant.

ODOM, J. The plaintiff shipped a carload of mules over defendant's line of railroad from Fort Worth, Texas, to Shreveport, Louisiana. When the shipment arrived at Shreveport, one of the mules was found to be lame and disabled. A veterinarian was called to treat it and he found that the mule's hind leg had been injured, as a result of which blood poisoning had set up. The disease did not yield to treatment and the mule's condition grew gradually worse. When all hope of restoring it had been abandoned, the mule was killed. Plaintiff brings this suit for its value, plus $15 expended for its treatment, $5 for having it dragged off and for $50 penalty for delay in making payment of the claim.

There was judgment in the lower court for plaintiff, as prayed for, and defendant appealed.

This was an interstate shipment under the Uniform Live Stock contract or bill of lading. The plaintiff proved that the animal was delivered to the carrier in good condition; that it was received in bad condition, suffering from blood poisoning resulting from a wound; and that the disease resulting from the wound reduced the animal to such condition that its recovery was impossible. He filed in evidence the contract of shipment, proved the value of the animal and the expenses incurred and proved that the claim was not paid. This made out a prima facie case against the carrier.

The testimony offered by defendant shows that the animal was injured while being loaded into the car by it at Fort Worth. The defense is that the carrier was in no way at fault and the injury to the mule was self-inflicted.

Counsel for the carrier say in brief that the movement of this animal from Fort Worth to Shreveport was covered and that the parties are bound by the Uniform Live Stock contract or bill of lading in the form prescribed by the Interstate Commerce Commission governing the shipment of live stock and wild animals, which contract contains the following special provision:

"Except in cases of negligence proximately contributing thereto, no carrier or party in possession of any of the live stock herein described shall be liable for any loss or damage thereof or delay caused by the act of God, the public enemy, quarantine, the authority of law, the inherent vice, weakness or natural propensity of the animal, or the act or default of the shipper or owner or agent of either or by riots, strikes, stoppage of labor or threatened violence."

The carrier especially pleads this exception in bar of plaintiff's action and contends that the animal injured itself by kicking, which was a "natural propensity of the animal" for which it is not liable under the

common law and under the plain letter of the contract. As to loss excepted by common law or by contract, the following rule is laid down in 6 Cyc., page 519:

"Proof of loss of or injury to the goods while in the carrier's possession as carrier throws upon him the burden of showing that the loss or injury occurred by reason of one of the excepted causes, or that it was within some special exception made by contract. Therefore, in the absence of any showing on the part of the carrier, or any exception contained in the contract (if plaintiff sues on a special contract), proof of the loss or injury is sufficient. It is for the carrier to bring the case within one of the common law exceptions if he relies on such exception as a defense. So if the carrier seeks to escape liability on the ground that the loss of or injury to the goods is one excepted by a valid special contract, he has the burden of proving not only the making of such special contract, but also that the loss or injury for which action is brought falls within a specified exception contained in such special contract."

This rule prevails in all jurisdictions so far as we know.

If it had been proved that the animal injured itself by kicking, our holding would be that the carrier is not liable. But the testimony introduced by defendant shows that the injury was caused otherwise. The animals were loaded into the stock car in the usual way. The stock pens are adjacent to the railroad track. The animals are driven from the pen to the car through a chute which is a passage consisting of a bridge as a flooring and with wings on the sides. One end of the bridge rests on the edge of the pen and the other in the car door. When these animals were all in the car, the loaders put up the "bull board," which is a piece of lumber 2x6 inches, extending across the car door on the inside and about three feet above the floor of the car. This "bull board" subserves a double purpose. The car door, which is closed by sliding, cannot be closed until the bridge which has one end resting in the door is "thrown," or taken away. The "bull board" keeps the animals from getting out of the car between the moment the bridge is thrown and the closing of the door. The other purpose of the "bull board" is to keep the animals from throwing their weight against the car door, the weakest part of the car. Now here is what happened to the mule:

Being one of the last ones in the car, she was next to the door, and during the interval between the removal of the bridge and the closing of the door, her hind foot in some way slipped off the edge of the floor under the bull board and her leg went out of the car and down between the edge of the car and the "dock" (we don't know what that is). She struggled to get her leg back but could not without help. In her struggles, her leg scraped the edge of the car door so that the skin was lacerated and she bled profusely.

Mr. Ward witnessed the entire transaction. He says the mule "kicked and slipped out," and again, "slipped under the bull board when he kicked out."

Mr. Hickman also saw it. He said:

"Saw the mule while crowding them in and he was standing in front of the door and I saw him there at the time the bull board was pulled and seen him when he stepped out of the car the animals backed up and his foot went out the door."

And again:

"They were crowding the mules in the car and this forced these mules back on this one and then is when the mule's foot went out there."

Mr. Prodfitt, the inspector, was present

and made a record of the injury which contained this note:

"Brown mare mule got hind leg down between car and dock."

If either Dr. Hickman or Mr. Prodfitt saw the mule kick, they did not say so. But Mr. Ward says the mule "kicked and slipped 'out." Conceded that she did kick, there is nothing to indicate that she injured herself by kicking. The injury resulted, not from the kicking, but from getting her leg outside the car and struggling to get it back.

Carriers cannot be and under the law are not required to warrant the safety of live stock against the consequences of their own vitality. If there is injury and loss due to the peculiar nature of the animals, the carrier is not liable, unless the loss could have been prevented by the exercise of reasonable foresight and vigilance on its part. The carrier is relieved from liability from such causes if it has provided suitable means for loading and transportation and exercised that degree of care which the nature of the property requires, or has not contributed to the injury otherwise.

The transporting of animals in cars on railroads is opposed to their instinct and habits. They may injure themselves through fright or they may injure or kill themselves or each other. The carrier, therefore, has no means of securing absolute safety. But due to the propensity of animals to become frightened and nervous while being loaded, and the danger of slipping and falling in consequence, the carrier is required to exercise a high degree of care in order to prevent them from injuring themselves. This animal slipped and one of its hind legs went out of the door under the bull board. This very con-

tingency could and should have been foreseen by the carrier and some safeguard, other than the bull board, should have been provided to prevent such accidents while the door was being closed. Not only that, the testimony affirmatively shows that if the bridge had been in place when the mule slipped, it would not have been injured. The bridge had to be moved, it is true, before the door could be closed, but it is shown that during the operation of removing the bridge preparatory to closing the door, the animals were nervous, restless, pushing and shoving each other about. Under such circumstances, they were likely to slip or fall, and as they were crowded in the car with some of them adjacent to the door, there was likelihood and danger that if one did slip, a part of its body would go out. Common prudence would suggest that the bridge under such circumstances should not be removed until the animals got quiet. We think the carrier was guilty of negligence in these respects and that such negligence was a contributing cause to the injury.

The carrier, we think, failed in its duty in another respect. There were two inspectors present, one of whom was a veterinarian. They saw the animal injured and saw that it was bleeding profusely. Yet it was permitted to go forward without any precautions being taken to prevent infection. They say it was not their duty to treat the animal—that is, they were there to inspect and make reports. They did report the injury, but nothing was done, for the reason, they say, that they did not consider the injury serious. The injury in itself was not very serious, but infection set in, blood poisoning resulted, culminating in the loss of the animal. This could have been prevented by disinfecting the wound. As evidence of

the fact that the carrier had knowledge of the injury to the animal, there was written across the face of the bill of lading before the shipment went forward, this notation:

"Brown mule right hind leg cut inside hock bleeding."

We find no error in the judgment appealed from and it is accordingly affirmed, with all costs.